IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


NATIONAL FARMERS UNION PROPERTY      )
AND CASUALTY COMPANY,                )
                                     )
                Plaintiff,           )      **CIVIL ACTION**
                                     )
v.                                   )      No.  07-1156-MLB
                                     )
BHULABHAI PATEL d/b/a SONNER         )
MOTOR INN[1] and LEGACY BANK[2],     )
                                     )
                Defendants.          )
─────────────────────────────────────)


<u>**MEMORANDUM AND ORDER**</u>

        This case comes before the court on cross motions for summary
judgment:

        1.    Defendant Bhulabhai Patel d/b/a Sooner Motor Inn's motion
              for summary judgment (Doc. 30) on his counterclaim for
              breach of good faith and fair dealing under the parties'
              insurance contract; plaintiff National Farmers Union
              Property and Casualty Company's response (Doc. 33); and
              defendant's reply (Doc. 36); and

        2.    Plaintiff's motion for summary judgment (Docs. 34, 35) on
              its claim for interpleader and declaratory judgment;
              defendant's response (Doc. 37); and plaintiff's reply (Doc.
              38).

The motions are fully briefed and are ripe for decision.  The motions
are denied for the reasons stated more fully herein.

**I.   Facts and Procedural History**

        On October 19, 2006, a fire occurred at the Sonner Motor Inn, in

─────────────────

        [1]  The court is entirely unsure of the correct spelling of
defendant Bhulabhai Patel d/b/a Sonner Motor Inn.  At various times,
the parties spell Mr. Patel's first name "Bhulabahai" and the first
word of the hotel as "Sooner" rather than "Sonner."  The court uses
the spelling utilized by the court docket.

        [2]  Legacy Bank has been served but has not filed an answer in this
case.

Winfield, Kansas, a motel owned by defendant Patel.  A report subsequently written by the Winfield Fire Department Fire Marshal, Gary Bowker, states that the fire alarm was sounded at 10:47 a.m.  The Winfield Fire Department responded to the fire and put the fire out. Bowker concludes that the "fire occurred as a result of the ignition of cooking oil in the pan located on the left rear burner of the electric range."  Bowker's report also details the damage caused by this fire, including fire damage to the kitchen, hallway, and computer room, with smoke and heat damage to the east bedroom, laundry room, and second floor.

Bowker's report[3] continues:

> After the fire had been extinguished, the owner's son Chirag Patel requested that the electrical power be restored to the remaining undamaged motel units.  I concurred and advised him to contact his electrician . . . .  It was made absolutely clear that electrical power was not to be restored to the fire building.  . . .

> Approximately three hours after the original alarm time, a second fire occurred within this structure at [1:47 p.m.].

> . . .

> The second fire which occurred within this structure appears to be the result of fire damaged electrical circuitry becoming re-energized after power was attempted to be restored to the uninvolved portions of the business.  I could find no evidence to indicate the initial fire which originated within the kitchen, communicated to . . . this location.

Bowker states that "power was inadvertently restored to the fire

---

[3] Plaintiff informed the court that the parties did not agree to stipulate to the facts in Bowker's report.  (Doc. 38 at 2). Plaintiff, however, has not controverted any facts included in the report.  The report therefore is uncontroverted for the purposes of this motion.

area," causing the second fire.[4]   Bowker and the fire investigators were still on the scene at the time of the second fire.

Plaintiff provided an insurance policy to defendant.   That policy pays for "direct physical loss of or damage to" defendant's property "caused by or resulting from any Covered Cause of Loss."   The policy also states: "The most [the insurer] will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the declarations."   The limits of insurance under the policy are $81,500 for structural damage and $14,675 for loss to business personal property.[5]   Defendant's damages exceeded $150,000.   The parties agree that the word "occurrence" is not defined in the policy.

On April 3, 2007, defendant informed plaintiff by letter that his counsel's opinion was that the October 19, 2006 events constituted two separate occurrences that gave rise to two fire loss claims.   In that letter, defendant also requested plaintiff pay defendant the undisputed amount owed under the policy for one fire loss.

On May 31, 2007, plaintiff filed a complaint for interpleader and declaratory judgment.   (Doc. 1.)   On June 13, 2007, plaintiff

---

[4]   Bowker's report refers to the electrical fire as the "second fire."   Although the parties dispute whether there were two fires or one fire that re-ignited, the court will use Bowker's phraseology.

However, the court's use of this phrase does not mean it has resolved, in its factual recitation, the legal issue of whether two occurrences happened on October 19, 2006.   Rather, the court will analyze whether there were two occurrences below.

[5]   At one point, the parties' agree that the limits of insurance are $71,000 for structural damage, $14,625 for loss to business personal property, and $86,000 for loss of business income.   The court cannot determine the correct limits of insurance, because they are listed by "building number" which is not further defined.   Regardless, the dollar amount of coverage is irrelevant to the ultimate issue now before the court.

deposited $96,375 into the court which it asserts is the maximum benefit under the insurance policy. (Docs. 3, 4.) Defendant filed an answer in which he responded that there were two fires that occurred at different times on October 19, 2006. Defendant asserts that plaintiff is responsible to pay the policy limits twice as a result of two separate fires. Defendant also filed a counter-claim against plaintiff based on breach of contract and breach of the implied covenant of good faith and fair dealing.[6] (Doc. 7.)

On April 22, 2008, defendant filed a motion for summary judgment on his cross claim for breach of contract. On June 2, 2008, plaintiff filed a motion for declaratory judgment on its claim. On July 10, 2008, the court requested that the parties submit additional briefing in order to satisfy their burden on each claim. (Doc. 40). Both parties have submitted letters to the court and the court is now prepared to rule. (Doc. 41).

## II.  Motion for Summary Judgment Standards: FRCP 56

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[6]  In addition, plaintiff filed a cross-claim against Finn's Electric Company, Inc. ("Finn's"), alleging that Finn's was responsible for the damages from the second fire. (Doc. 10.) On October 26, 2007, defendant filed a cross-claim against Finn's (Doc. 13), which he subsequently voluntarily dismissed (Doc. 21). On October 31, 2007, Finn's filed a motion to dismiss plaintiff's third-party complaint (Doc. 15), which was subsequently granted (Doc. 28). As a result, Finn's is no longer a party in this case.

An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998).

When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. <u>Prenalta Corp. v. Colo. Interstate Gas Co.</u>, 944 F.2d 677, 684 (10th Cir. 1991).

Even though the parties have filed cross-motions for summary judgment, the legal standard does not change. <u>See United Wats, Inc. v. Cincinnati Ins. Co.</u>, 971 F. Supp. 1375, 1382 (D. Kan. 1997). It remains this court's sole objective to discern whether there are any disputes of material fact, <u>see Harrison W. Corp. v. Gulf Oil Co.</u>, 662 F.2d 690, 692 (10th Cir. 1981), and the court will treat each motion separately. <u>See Atl. Richfield Co. v. Farm Credit Bank of Wichita</u>, 226 F.3d 1138, 1148 (10th Cir. 2000).

## III. Analysis

### A.   Plaintiff's Motion for Summary Judgment

Plaintiff filed this interpleader action pursuant to the Federal Interpleader Act, 28 U.S.C. §§ 1335, 1397, 2361, and Federal Rule of Civil Procedure 22. An interpleader action is a two-stage litigation process. <u>See, e.g.</u>, <u>Fresh Am. Corp. v. Wal-Mart Stores, Inc.</u>, 393 F.

Supp. 2d 411, 415 (N.D. Tex. 2005)(stating that the first stage of the interpleader action is "for the Court to determine whether a proper case for interpleader is presented" and the second stage is "to determine the rights of the claimants"). This action remains at the first stage of the interpleader litigation process.

Section 1335(a) of the Federal Interpleader Act states:

> The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any person, firm, or corporation, association, or society having in his or her custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, . . . if (1) Two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits . . .; and if (2) the plaintiff has deposited such money . . . into the registry of the court . . . .

28 U.S.C. § 1335(a).

The statute requires that the two adverse claimants be of diverse citizenship. There are two defendants, Legacy Bank and Sonner Motor Inn. Legacy Bank has not filed an answer in this case. The court asked plaintiff's counsel to address the court's jurisdiction under the Interpleader Act and plaintiff responded that "there is a significant lien on the real estate." (July 21 Letter from Paul Hasty). Counsel did not, however, inform the court as to whether defendants are of diverse citizenship. Therefore, the court cannot determine whether it has jurisdiction under 28 U.S.C. § 1335(a). Plaintiff's motion for summary judgment on its interpleader claim is denied, without prejudice.

Plaintiff also asserts jurisdiction under 28 U.S.C. § 1332.

-6-

Plaintiff is a citizen of Colorado and Sonner is a citizen of Kansas. Therefore, this court has jurisdiction under section 1332. Plaintiff moves for a declaratory judgment under 28 U.S.C. § 2201, asserting that it is responsible to pay the policy limits for only one occurrence under the policy. The policy does not define the term occurrence. The Kansas Supreme Court recently held that the word occurrence is ambiguous if not defined in an auto liability insurance policy. <u>American Family Mut. Ins. Co. v. Wilkins</u>, 285 Kan. 1054, 1059, 179 P.3d 1104 (Kan. 2008)("Because the policy at issue in this case does not define the term "occurrence" and the cases from various courts demonstrate that the term 'occurrence' is susceptible to conflicting meanings, we find the term to be ambiguous.")

The court agrees with the reasoning in <u>Wilkins</u> and finds that an ambiguity exists in the insurance policy's limitation of liability. Simply put, there is language of "doubtful or conflicting meaning" when the policy is viewed by the reasonably prudent insured. <u>See</u> <u>Fiorella v. Travelers Property Cas. Ins. Co.</u>, 142 P.3d 321, 326 (Kan. Ct. App. 2006). The definition of the word "occurrence" in common parlance is not easily pinpointed and could mean anything from "something that takes place" to an "incident or event, especially one that happens without being designed or expected." <u>See</u> <u>The American Heritage Dictionary of the English Language</u> 1251 (Houghton Mifflin Company 3d ed. 1996); <u>Black's Law Dictionary</u> 974 (5th ed. 1979).

From these definitions, it is clear only that the word "occurrence," given its natural and ordinary meaning, imports a contract providing coverage for the property insured after an event or happening within the policy period. Because the general rule

requires the insurer to use "clear and unambiguous language" to limit coverage, the insurance policy is construed in favor of the insured. Marshall, 276 Kan. At 112, 73 P.3d at 130.

In American Family Mut. Ins. Co. v. Wilkins, supra, the court observed that when the term occurrence is found to be ambiguous, courts have applied three different tests to determine the number of occurrences: cause, effect, and event triggering liability. 285 Kan. at 1062.[7] Kansas courts have consistently utilized either the event triggering liability test or the cause test. Id. at 1060. The court determined that, "[b]ased on prior Kansas precedent, . . . the number of occurrences is determined by the cause of the injury." Therefore, in order to determine the number of occurrences under the policy in this case, the court will utilize the cause test.[8]

---

[7] The court specifically asked counsel to brief the applicability of Wilkins to this case. Defendant responded by a letter brief and agreed that Wilkins was directly on point with the issues in this case. Plaintiff, however, asserted that Wilkins "isn't really on point with this case. The claim in that case was a liability insurance claim. The policy was an 'occurrence' policy. The lawsuit pending in your court is a first party loss. There is no liability claim pending under the policy. The first party coverage is not "occurrence" coverage. Sonner Motor Inn purchased coverage for a 'loss,' not an 'occurrence.'" (July 21, 2008 Letter from Paul Hasty). Plaintiff's position, however, is opposite of its position in its motion for summary judgment. Plaintiff spends its entire brief discussing whether there were one or two "occurrences." The brief does not even mention the word "loss." Moreover, the policy specifically states "[t]his is an Occurrence policy." (Doc. 30, exh. 2 at 2). Finally, plaintiff cites no cases which discuss "first party loss" as opposed to "occurrence" coverage.

[8] Plaintiff cites to Kansas cases in which the courts used the events test to determine the number of occurrences. The court does not find those cases persuasive in light of Wilkins' holding that "the liability-triggering event test, in certain circumstances, is a narrow class that can overlap with the cause test. Consequently, the Court of Appeals and this court have essentially applied the same underlying principle in analyzing the term "occurrence" as it relates to liability limits for an insurance policy. Based on prior Kansas

"Under the cause test, a court must determine whether there was one proximate, uninterrupted, continuing cause that resulted in all the injuries. If one cause is interrupted and replaced by another intervening cause, then the chain of causation is broken, resulting in two or more occurrences depending on the number of intervening causes." Id. at 1062 (internal citations omitted). The court also observed that the number of occurrences can depend on the "time-space continuum" and that if an event is separated by a period of time there are multiple occurrences. Id. at 1066-67.

In Wilkins, the facts were recited as follows:

> On April 4, 2005, Laverne A. Roy was driving a 2003 Ford F350 in a southbound direction in the northbound lanes of Interstate 35, near the south Wichita Turnpike Interchange in Sedgwick County, Kansas. Rebecca A. Jones was driving a 2005 Honda Civic in a northbound direction in the northbound lanes of Interstate 35 near the south Wichita Turnpike Interchange in Sedgwick County. At milepost 38.3, at 1:38 p.m., Jones swerved to avoid Roy's vehicle and overturned her Honda. . . .

> Carlton W. Wolf, Jr., driving a 1985 Mercedes, was also traveling in a northbound direction in the northbound lanes of Interstate 35 near the south Wichita Turnpike Interchange in Sedgwick County, Kansas. At milepost 37.8, at 1:39 p.m., Wolf swerved to avoid Roy's vehicle and rolled his Mercedes. . . .

> Craig Wilkins was also driving in a northbound direction in the northbound lanes of Interstate 35 near the south Wichita Turnpike Interchange in Sedgwick County, Kansas, in a 2002 Dodge truck. At milepost 37.8, at 1:39 p.m., Wilkins' truck struck Roy's vehicle in a head-on collision. Roy, Wilkins, and a passenger in Wilkins' vehicle, Chase Wilkins, were killed. Wilkins' two other passengers, Stacy Wilkins and Dakota Wilkins were injured. . . .

> James L. Brooks, driving a 1995 Ford truck, was also

---

precedent, we conclude that the number of occurrences is determined by the cause of the injury." Wilkins, 285 Kan. at 1063.

> traveling in a northbound direction in the northbound lanes of Interstate 35 near the south Wichita Turnpike Interchange in Sedgwick County, Kansas. At milepost 37.8, at 1:39 p.m., Brooks swerved to avoid the collision between Wilkins and Roy and hit a barrier wall. . . .

Wilkins, 285 Kan. at 1056-57.

After applying the cause test, the court determined that there were two occurrences. The first occurrence took place when Roy encountered Jones' vehicle and the second occurrence took place when Wolf swerved to avoid Roy's truck and rolled his car. The court found that it was not a continuous occurrence because it was separated by one minute in time and one-half mile in space. The court also held that all of the subsequent events were one occurrence because they happened in such rapid instantaneous succession. Id. at 1066-67.

In the case of Hodgson v. Bremen Farmers' Mut. Ins. Co., 27 Kan. App. 2d 231, 3 P.3d 1281 (Kan. Ct. App. 1999), the Kansas Court of Appeals utilized the cause test and also determined that there were two occurrences. In Hodgson, a boy was attacked by a dog and the boy's father ran to aid his son. While running, the father fell and was injured. The father proceeded to free his son, but both the son and father were also injured by the dog. The insurance company argued that these facts established only one occurrence under the limitation language of the policy, thereby limiting the insurer's liability to the amount payable per occurrence. The plaintiffs responded that the facts established two occurrences, the father's injury from his fall and the father and son's injuries from the dog attack. 27 Kan. App.2d at 231-32, 3 P.3d at 1282-83.

The Hodgson court first cited Mid-Century Ins. Co. v. Shutt, 17 Kan. App.2d 846, 845 P.2d 86 (1993), for the proposition that "[i]n

Kansas, it is the number of events, not the number of causative negligent acts, which is dispositive." 27 Kan. App. 2d at 235, 3 P.3d at 1284. The court then noted that the language of the insurance policy defined occurrence to include "continuous or repeated exposure to substantially the same general harmful conditions." The court found this definition of occurrence was ambiguous and, in construing the definition against the insurer, found that the injuries suffered by the father and son did not result from exposure "to the same or general harmful conditions." The court concluded: "In sum, because the policy was ambiguous, and the facts show two events which triggered liability, the facts of the instant case present two occurrences, not one." Id. at 236, 3 P.3d at 1285. Even despite language in the insurance policy defining occurrence so as to limit the insurer's liability in cases of exposure to the "same general harmful conditions," the Hodgson court was still willing to find more than one occurrence under the policy.

Both Hodgson and Wilkins support a finding of two occurrences in this case. The first fire occurred after grease ignited in the kitchen of the hotel. The second fire did not occur until approximately three hours later. The second fire was ignited by "fire damaged electrical circuitry becoming re-energized after power was attempted to be restored to the uninvolved portions of the business." There was "no evidence to indicate the initial fire which originated within the kitchen, communicated to . . . this location."

The cause of the first fire was the grease in the kitchen. That fire was then completely extinguished by the firefighters. After the fire was out, defendant received permission to restore electricity to

-11-

the other areas of the hotel.  The electrician performed that service and, after doing so, a second fire started.  Had the electrician not restored power, the second fire would not have occurred.  The report states that at the time the second fire occurred, the firefighters had completely extinguished the first fire and had been on the scene investigating the cause of that fire.  Therefore, the acts of the electrician caused the second fire to spark and were an intervening cause.  <u>Wilkins</u>, 285 Kan. at 1062.  The first fire's cause was not a "proximate, uninterrupted, continuing cause," but it was broken by the acts of the electrician.  Moreover, the court is also inclined to find two occurrences because of the significant "time-space continuum" between the two fires.  <u>Id.</u> at 1066-67.  The second fire did not occur until approximately three hours after the first fire.  The significant time between the two fires and the report that evidences that the first fire had been extinguished support the conclusion that there were two separate occurrences.

Therefore, plaintiff's motion for summary judgment on its claim for declaratory judgment is denied.

**B.    Defendant's Motion for Summary Judgment**

Defendant has moved for summary judgment on his claim of breach of good faith and fair dealing.[9]   Defendant seeks a ruling that

_____

[9] Defendant filed a counterclaim for breach of contract and breach of good faith and fair dealing.  The court asked defendant to clarify his position on his claims and support his motion for summary judgment on his claim for breach of contract with legal authority. Defendant responded by stating that his claims were one in the same. (Doc. 41).  However, defendant did not cite any authority to support a finding of breach of contract.  Defendant's motion for summary judgment only briefed the claim of breach of duty of good faith and fair dealing.  Therefore, the court will analyze defendant's claim under the standard for breach of the duty of good faith and fair

-12-

plaintiff owes defendant the policy limits for two separate occurrences under the policy. Defendant, however, has only attached evidence of the cost of repairs. Defendant has not attached any evidence of the loss of business, which was insured at $86,000.

The Kansas Supreme Court set out the standard for a breach of duty of good faith claim as follows:

> It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

Spencer v. Aetna Life & Cas. Ins. Co., 227 Kan. 914, 916-17, 611 P.2d 149 (Kan. 1980).

Defendant argues that plaintiff has breached its duty by failing to pay the policy limits on two occurrences. Plaintiff, however, has paid one policy limit into the court. Plaintiff only disputes the claim on the second occurrence. Defendant has not identified how plaintiff's position on whether there were one or two occurrences was "without proper cause" and in bad faith. "An insurance company should not be required to settle a claim when there is a good faith question as to whether there is coverage under its insurance policy." Associated Wholesale Grocers, Inc. v. Americold Corp., 261 Kan. 806, 846, 934 P.2d 65, 90 (Kan. 1997). Therefore, defendant has failed to meet his burden. Defendant's motion for summary judgment is denied.

**IV. Conclusion**

---

dealing.

-13-

Defendant's motion for summary judgment on his counterclaim (Doc. 30) is denied.  Plaintiff's motion for summary judgment on its claim for interpleader and declaratory judgment (Doc. 34) is denied for the reasons stated more fully herein.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed five pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   19th   day of August 2008, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE